USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 05/05/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
GERMAN LARREA, *individually and on be-* :
*half of others similarly situated*, :
:
         Plaintiff,  :  15-CIV-1515 (RA)
:
   -v-       :  OPINION AND ORDER
:
FPC COFFEES REALTY CO., INC. *doing* :
*business as* CAFFE REGGIO, FABRIZIO :
PRIM CAVALLACCI and ELENA A. :
BATYUK, :
:
         Defendants. :
:
------------------------------------------------------------X

RONNIE ABRAMS, United States District Judge:

  Plaintiffs German Larrea and Segundo Bermejo bring this action against Defendants FPC Coffees Realty Co., Fabrizio Prim Cavallacci, and Elena Batyuk for alleged violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Before the Court is the parties' application for approval of a settlement agreement. For the reasons set forth below, the Court declines to approve the proposed settlement agreement at this time.

## BACKGROUND

  From approximately October 1994 to December 2014, Larrea worked as a cook at Caffe Reggio, an Italian restaurant owned by Cavallacci and Batyuk. *See* Compl. ¶¶ 2, 15 (Dkt. 1). Larrea alleges that he regularly worked more than forty hours per week without receiving minimum wage or overtime compensation. *See id.* ¶ 9.

  On March 2, 2015, Larrea initiated this action on behalf of himself and all others similarly situated. Larrea asserted six claims for violations of the FLSA and the NYLL. *See id.* ¶¶ 69–90.

Two months after notifying the Court that they had reached a settlement, *see* Dkt. 33, the parties submitted a settlement agreement and a letter setting forth their views on why the agreement is fair and reasonable, *see* Dkt. 37. The Court ordered Plaintiffs to submit contemporaneous billing records documenting the hours worked by each of their attorneys, *see* Dkt. 38, which Plaintiffs filed shortly thereafter, attaching billing records for one of the attorneys identified in their application, *see* Dkt. 39.

## LEGAL STANDARD

"To promote FLSA's purpose of ensuring 'a fair day's pay for a fair day's work,' a settlement in a FLSA case must be approved by a court or the Department of Labor." *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *1 (S.D.N.Y. Mar. 24, 2016) (quoting *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)). To obtain approval, the parties must demonstrate that their agreement is "fair and reasonable." *Beckert v. Ronirubinov*, No. 15-CV-1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015) (citation omitted). "A fair settlement must reflect a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15-CV-06278 (BCM), 2016 WL 3647603, at *1 (S.D.N.Y. June 29, 2016) (quoting *Mamani v. Licetti*, No. 13-CV-7002 (KMW), 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014))). "In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5)

2

the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted).

## DISCUSSION

The Court addresses five aspects of the proposed settlement agreement: (1) the settlement amount, (2) the release provision, (3) the confidentiality provision, (4) the non-disparagement provision, and (5) the attorneys' fees provision. While the Court finds that the proposed settlement amount is fair and reasonable, the proposed agreement must be rejected on the basis of the remaining four aspects discussed below.

### A. Settlement Amount

Under the proposed settlement agreement, Defendants agree to pay Plaintiffs a total of $130,000 in three installments. *See* Fairness Letter at 2 (Dkt. 37). Plaintiffs estimate that they are entitled to a maximum recovery of $300,000 in back wages, including cumulative or "stacked" awards of liquidated damages under the FLSA and the NYLL. *See id.* Excluding one of the two of liquidated damages awards, Plaintiffs represent that their maximum recovery would be $212,000. *See id.* The proposed settlement amount thus represents approximately 43 percent of Plaintiffs' anticipated maximum recovery including cumulative liquidated damages, or 61 percent of Plaintiffs' maximum recovery excluding one award of liquidated damages.

Under the circumstances of this case, this amount is fair and reasonable. While it falls short of the maximum amount Plaintiffs assert they might have recovered at trial, this amount is significant "in light of the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement." *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016). In particular, the parties represent that this litigation involved "sharply contested factual and legal disputes that went to the heart of Plaintiffs' claims," including a dispute regarding the dates on

3

which Plaintiffs worked at Caffe Reggio. In addition, because Defendants produced employment records to support their position, it would likely be more difficult for Plaintiffs to establish liability solely on the basis of their testimony, as plaintiffs in some wage-and-hour cases are able to do. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687–88 (1946); *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 364 (2d Cir. 2011). Finally, Plaintiffs' ability to collect on any judgment in this case would be complicated by the fact that Caffe Reggio's owner does not live in the United States. *See, e.g., Howard v. Don Coleman Advert. Inc.*, No. 16-CV-5060 (JLC), 2017 WL 773695 (S.D.N.Y. Feb. 28, 2017) (finding that a plaintiff's "serious concerns about collectability . . . 'militates in favor of finding a settlement reasonable'" (quoting *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013))). In light of these risks and challenges, the proposed settlement amount represents a substantial recovery.

This amount is also reasonable when viewed as a percentage of Plaintiffs' maximum recovery. On the basis of the parties' submissions, the Court finds that Plaintiffs' maximum recovery was $212,000, which excludes cumulative liquidated damages under the FLSA and the NYLL, in light of the "emerging jurisprudential trend . . . that an employee may not recover cumulative liquidated damages under both the FLSA and NYLL for overlapping claims." *Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135 (RJS), 2016 WL 1587242, at *4 (S.D.N.Y. Apr. 19, 2016); *see also Chowdhury v. Hamzan Express Food Corp.*, 666 F. App'x 69, 61 (2d Cir. 2016) (summary order). The proposed settlement thus represents approximately 61 percent of Plaintiffs' maximum recovery, a portion exceeding that often approved by courts in this District. *See, e.g., Hyun*, 2016 WL 1222347, at *2 (approving a settlement amount of approximately 51 percent of plaintiffs' maximum recovery); *Beckert*, 2015 WL 8773460, at *2 (approving a settlement of approximately 25

4

percent of the maximum possible recovery). The Court thus finds that the parties' proposed settlement amount is fair and reasonable.

## B. Release

The Court may not, however, approve the sweeping "release" provision in the proposed settlement agreement. "In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, No. 16-CV-1795 (PAE), 2016 WL 7177510, at *1 (S.D.N.Y. Dec. 8, 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15-CV-2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)). For this reason, "[a] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are 'limited to the claims at issue in this action.'" *Cionca v. Interactive Realty, LLC*, No. 15-CV-5123 (BCM), 2016 WL 3440554, at *3 (S.D.N.Y. June 10, 2016) (quoting *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259 (RA), 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015)).

The release provision in this agreement is far too broad to survive judicial scrutiny. It begins by requiring Plaintiffs to release Defendants and any related entities "from all or any manner of actions, causes and causes of action, suits, debts, obligations, damages, complaints, liabilities, losses, covenants, contracts, controversies, agreements, promises, and expenses . . . claims and demands whatsoever at law or in equity." *See* Agreement ¶ 7 (Dkt. 37). It

then provides a lengthy but non-exhaustive list of statutes and claims barred by the release—ranging from Title VII of the Civil Rights Act of 1964 to the Occupational Health and Safety Act. *See id.* This provision further explains that the release applies not only to existing claims, but to any claims "Plaintiffs ever had, now ha[ve], or which Plaintiffs hereafter can, shall or may have." *Id.* This provision is plainly overbroad: it requires Plaintiffs to waive virtually any claim, of any type, in existence now or in the future, against Defendants or any possibly related entity. It provides no language limiting the release to the claims asserted in this action. This provision does not meet the standards established for approval by courts in this District. *See, e.g., Poko-St. Ann L.P.*, 176 F. Supp. 3d at 343 (declining to approve a "broad and sweeping general release, extending over three pages of text, under which plaintiffs release defendants, together with a long list of related entities and persons, of and from every imaginable claim"); *Lazaro-Garcia*, 2015 WL 9162701, at *2 (finding that an agreement requiring plaintiff "to waive essentially all claims that may have arisen out of his employment with Defendants" was not fair and reasonable).

It is true, as the parties' letter notes, that the general release in this agreement is mutual. Some courts in this District have approved release provisions on the basis of their mutuality. *See, e.g., Cionca*, 2016 WL 3440554, at *4 (approving mutual general release); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (same). In the Court's view, however, "[t]he fact that the general release is styled as mutual, although favoring the settlement, does not salvage it, absent a sound explanation for how this broad release benefits the plaintiff employee." *Gurung*, 2016 WL 7177510, at *2; *see also, e.g., Flores-Mendieta v. Bitefood Ltd.*, 15-CV-4997 (AJN), 2016 WL 1626630, at *2 (S.D.N.Y. April, 21, 2016) (rejecting a mutual release provision and finding that the Court "cannot 'countenance employers using FLSA settlements to erase all liability whatsoever in exchange for . . . payment of

6

wages allegedly required by statute.'" (alteration in original) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181)). As Judge Engelmayer explained in *Gurung*, "despite the formal reciprocity of such releases, their practical effect in some cases may be lopsided because they may stand to benefit only the employer defendant, who realistically may be less likely than the employee plaintiff to have latent claims against its adversary." *Gurung*, 2016 WL 7177510, at *2. Here, the parties have provided no basis for finding that this release provision provides Plaintiffs any comparable benefit; indeed, whereas the agreement provides a long list of the claims an employee may assert against her employer, it provides no illustration of a claim that the employer may assert against the employee. Thus, the Court cannot approve this general release provision, notwithstanding its mutuality.

### C. Confidentiality

The Court must also reject the proposed agreement's confidentiality provision. "Both before and after the Second Circuit's decision *in Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015), courts in this Circuit have routinely found confidentiality provisions in FLSA settlements against public policy." *Martinez*, 2016 WL 206474, at *1 (collecting cases). "[A] non-disclosure agreement in an FLSA settlement, even when the settlement papers are public[ly] available on the Court's docket, is 'contrary to well-established public policy' because it inhibits one of the FLSA's primary goals—to ensure 'that all workers are aware of their rights.'" *Camacho*, 2015 WL 129723, at *2 (quoting *Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635 (WHP), 2014 WL 4953746, at *1 (S.D.N.Y. Sep. 26, 2014)). The confidentiality provision in this agreement prohibits the parties from disclosing, in whole or in part, "the terms and provisions, and existence" of the agreement. Agreement ¶ 5. If asked about the status of this case, the parties must reply "that it has been 'resolved and concluded.'" *Id.* This provision, like the release provision, is

grossly overbroad: Plaintiffs may not disclose even the existence of a settlement—let alone the settlement terms or amounts—to anyone other than their financial advisors. *See id.* Moreover, the parties' insistence on the confidentiality of this agreement—which the agreement describes as a matter of "utmost importance to Defendants"—is "difficult to comprehend here, as this information has already been disclosed in numerous places on the public record through ECF filings." *Hyun*, 2016 WL 1222347, at *3. In light of the "well-settled principle that 'confidentiality provisions in FLSA settlements are contrary to public policy,'" the Court will not approve this provision of the proposed agreement. *Id.* (alteration omitted) (quoting *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015)).

## D. Non-Disparagement

The proposed settlement agreement's non-disparagement provision must also be rejected. "Although not all non-disparagement clauses are *per se* objectionable, if the provision 'would bar plaintiffs from making any negative statement about the defendants, it must include a carve-out for truthful statements about plaintiffs' experience litigating their case.'" *Lazaro-Garcia*, 2015 WL 9162701, at *3 (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 180 n.65). "Otherwise, such a provision contravenes the remedial purposes of the statute and, in this context, is not 'fair and reasonable.'" *Nights of Cabiria*, 96 F. Supp. 3d at 180 n.65. Indeed, "[w]ithout this exception, [an employer] could argue that [the plaintiff] would violate the agreement by informing other employees—who may not be aware of their rights under FLSA—of the company's failure to pay the wages required by law." *Lazaro-Garcia*, 2015 WL 9162701, at *3. Here, the agreement provides that Plaintiffs "shall not act in any manner that might damage the business or reputation of Defendants, including but not limited to, making disparaging or detrimental comments, statements,

or the like about Defendants in their professional and/or personal capacity to the media or otherwise." Agreement ¶ 6. This provision provides no language narrowing the meaning of "disparaging or detrimental," and it contains no "carve-out for truthful statements about plaintiffs' experience litigating their case." *Nights of Cabiria*, 96 F. Supp. 3d at 180 n.65. Under settled law in this District, the Court will not approve this provision. *See id.*; *see also, e.g.*, *Cionca*, 2016 WL 3440554, at *3 (rejecting a provision barring any comments that "reflect adversely on [defendants'] business affairs or practices" without a carve-out for truthful statements about the underlying case (alteration in original)); *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2015 WL 7871036, at *3 (S.D.N.Y. Dec. 3, 2015) (rejecting a provision prohibiting plaintiffs from "mak[ing] disparaging or detrimental comments, statements or the like about Defendants").

### E. Attorneys' Fees

Finally, the Court will not approve the attorneys' fees provision in the proposed settlement agreement. The agreement allocates $52,000—or 40 percent of the net settlement amount—to Plaintiffs' counsel.[1] In light of the net settlement amount and the records the parties have submitted of counsel's work in this action, this amount is unreasonable.

"Both the FLSA and the NYLL are fee-shifting statutes that entitle plaintiffs to recover reasonable attorney's fees and costs incurred in successfully prosecuting wage-and-hour actions." *Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816 (PAE), 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016). "Where plaintiffs obtain a favorable settlement in an action brought pursuant to the FLSA, they constitute prevailing parties and are entitled to attorney's fees." *Andrews v. City of New York*, 118 F. Supp. 3d 630, 634–35 (S.D.N.Y. 2015). "In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung*, 2016 WL

---

[1] The parties have not indicated that they incurred any costs in this action. On the present record, therefore, the Court finds that the gross settlement amount is equal to the net amount.

9

7177510, at *2. "A court evaluating attorneys' fees in an FLSA settlement may use either the 'lodestar' method or the 'percentage of the fund' method, but should be guided in any event by factors including: '(1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public policy considerations.'" *Cionca*, 2016 WL 3440554, at *2 (quoting *Lopez v. Ploy Dee, Inc.*, No. 15-CV-647 (AJN), 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016)).

Viewed as a percentage of the net settlement amount, the award of attorneys' fees to Plaintiffs' counsel is excessive. "[C]ourts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances." *Santos v. EL Tepeyac Butcher Shop, Inc.*, No. 15-CV-814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015); *see also, e.g., Lazaro-Garcia*, 2015 WL 9162701, at *3 (rejecting proposed FLSA settlement providing attorneys' fees equal to 39 percent of the total settlement fund); *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13-cv-6667 (PAE), 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015) (rejecting 37 percent fee award); *Nights of Cabiria*, 96 F.Supp.3d at 181–82 (rejecting fee award between 40 or 43.6 percent). Here, the agreement awards 40 percent of the net settlement amount to Plaintiffs' counsel—significantly above the limit ordinarily imposed by courts in this District. The parties have provided no basis to conclude that this case presents "extraordinary circumstances" justifying a departure from the general rule that an award of greater than one third of the net settlement is not fair or reasonable.

When parties allocate an excessive portion of a net settlement amount to attorneys' fees in FLSA settlements, courts in this District often reduce the fee award to one third. *See, e.g., Run Guo Zhang*, 2015 WL 5122530, at *4. In considering the reasonableness of a one-third award, courts often compare this amount to the amount that would be awarded pursuant to the lodestar

method. *See, e.g.*, *Escobar*, 2016 WL 7048714, at *4 (approving a one-third fee award that represented a multiplier of approximately 1.03 of the lodestar amount); *Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906 (HBP), 2015 WL 4006896, at *10–12 (S.D.N.Y. July 1, 2016) (approving a one-third fee award equal to "a 1.68 multiplier of the lodestar calculation and a 1.52 multiplier of plaintiffs' counsel's stated hourly rates"); *Lazaro-Garcia*, 2015 WL 9162701, at *2 (rejecting a contingency fee award that represented "approximately 1.4 times what [counsel] would have been entitled to had they billed their clients hourly"); *Sakiko Fujiwara v. Sushi Yashuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (awarding a fee that represented a 2.28 multiplier of modified lodestar calculation and noting that "multiplier near 2 compensates [plaintiffs' counsel] appropriately"). The lodestar amount is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," with the reasonable hourly rate defined as the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Hernandez v. JRPAC Inc.*, No. 14-CV-4176 (PAE), 2017 WL 66325, at *2 (S.D.N.Y. Jan. 6, 2017) (citations omitted). "As the fee applicant, plaintiff bears the burden of documenting the hours reasonably spent by counsel, the reasonableness of the hourly rates claimed." *Vasquez v. 701 W. 135th Cafe, Inc.*, No. 16-CV-692 (WHP), 2016 WL 8290650, at *2 (S.D.N.Y. Dec. 12, 2016) (alterations omitted) (quoting *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011)).

In light of the likely lodestar award in this case, even a reduced award of one-third of the net settlement amount is excessive. Although the parties' letter indicates that three attorneys represented Plaintiffs in this action, the parties submitted billing records only for Joshua Androphy, who worked 10.9 hours at an hourly rate of $400. *See* Letter from Gerrald Ellis Ex. 1 (Dkt. 39-1). According to the parties' letter, Mr. Androphy is a litigation associate who graduated from law

11

school in 2002 and has tried numerous FLSA cases. *See* Fairness Letter at 3–5. Courts in this District generally approve rates of $300 per hour for senior attorneys or associates with eight or more years' experience. *See Hernandez*, 2017 WL 66325, at *3. In *Hernandez*, however, Judge Engelmayer found that Mr. Androphy has "somewhat more experience than that," as he graduated from law school nearly fifteen years ago and has served as lead trial counsel in FLSA cases, and determined that an hourly rate of $350 is reasonable for his work. *Id.* The Court agrees and thus finds that an hourly rate of $350 should apply to Mr. Androphy's work. *See id. But see Rosendo v. Everbrighten Inc.*, No. 13-CV-7256 (JGK) (FM), 2015 WL 1600057, at *8–9 (S.D.N.Y. April 7, 2015) (recommending an hourly rate of $300 for Mr. Androphy), *report and recommendation adopted*, 2015 WL 4557147, at *1 (S.D.N.Y. July 28, 2015). At this rate, Plaintiffs' attorneys' fees under the lodestar method total $3,815. By contrast, one third of the net settlement amount is $43,333. Thus, if the Court were to approve a fee award of one third of the net settlement amount, this amount would represent an 11.4 multiplier of the of the lodestar calculation. While the Court recognizes that contingency fee agreements are "not inherently unfair" and "can encourage early settlement of a case," such an award is simply too great here in light of the limited records of the attorneys' work performed in this case. *Weng v. T&W Rest., Inc.*, No. 15-CV-08167 (PAE), 2016 WL 3566849, at *4 (S.D.N.Y. June 22, 2016).

Thus, on the basis of the information the Court has received, an award of $3,815 to Plaintiffs' attorneys is fair and reasonable. The Court notes that this amount reflects only 10.9 hours of work performed by Mr. Androphy, as the parties did not submit contemporaneous billing records for any other attorneys. To the extent that the parties seek approval of a greater award of attorneys' fees, they must submit contemporaneous billing records or other documentation demonstrating that their proposed award is fair and reasonable.

## CONCLUSION

The Court therefore declines to approve the parties' settlement agreement at this time. The parties may proceed in one of the following three ways by May 12, 2017:

1. The parties may file a revised settlement agreement that does not include (a) a release provision that extends beyond the claims at issue in this action, (b) this confidentiality provision, (c) a non-disparagement provision with no exception for truthful statements regarding Plaintiffs' experience in this litigation, and (d) an attorneys' fees provision awarding more than $3,815 or any other amount not supported by contemporaneous billing records;

2. The parties may file a joint letter indicating their intention to abandon the settlement agreement and continue pursuing this litigation; or

3. The parties may stipulate to a dismissal of this action *without* prejudice, as the Second Circuit has not expressly held that such settlement agreements require court approval. *See Cheeks*, 796 F.3d at 201 n.2.

SO ORDERED.

Dated: May 5, 2017
New York, New York

Ronnie Abrams
United States District Judge